## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEWART C. PELTON,

        Plaintiff,

Case No. _____

vs.

HOWMEDICA OSTEONICS CORP., a New
Jersey Corporation, d/b/a STRYKER
ORTHOPAEDICS, and STRYKER CORP., a
Michigan Corporation,

JURY TRIAL DEMANDED

Defendants.

## COMPLAINT

Plaintiff, Stewart C. Pelton, brings this complaint against Defendants, Howmedica Osteonics Corp., d/b/a Stryker Orthopedics; and Stryker Corp. and alleges as follows:

1.    This is an action for damages relating to Defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the Accolade Hip Stem and the LFIT V40 Femoral Head sold under the name "The Accolade TMZF® Hip Stem and LFIT Anatomic V40 Femoral Head" (hereinafter "Accolade" or "Defective Device").

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiff, Stewart C. Pelton ("Plaintiff"), is a resident of Bradenton, Manatee County, Florida.  Plaintiff was implanted with a Defective Device in his left hip on or about January 19, 2009 at Blake Medical Center, in Bradenton, Florida.

3.    Defendant, Howmedica Osteonics Corp., (hereinafter "HOWMEDICA"), d/b/a STRYKER ORTHOPAEDICS, is a foreign corporation organized and existing under the laws of New Jersey having its principal place of business located at 325 Corporate Drive, Mahwah, New Jersey 07430. HOWMEDICA conducts business throughout the United States including in the

state of Florida.

4.     Defendant, Stryker Corp. (hereinafter "STRYKER") is a foreign corporation organized and existing under the laws of Michigan having its principal place of business located at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.   STRYKER conducts business throughout the United States including the state of Florida.

5.     At all times material hereto, Defendants HOWMEDICA and STRYKER (hereinafter collectively referred to as "STRYKER DEFENDANTS") developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the Accolade, either directly or indirectly, to members of the general public within the state of Florida and elsewhere, including to Plaintiff.

6.     This Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a): "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between (1) citizens of different states." Damages to Plaintiff exceed the sum or value of $75,000, exclusive of interest and costs.  The Court also has personal jurisdiction over the parties because Plaintiff is a resident of Florida and Defendants systematically and continually conduct business here and conduct business throughout the United States.

7.     Venue of this case is appropriate in the United States District Court for the Middle District of Florida because Plaintiff resides in this District and Defendants conduct business and have places of business in the District.

## FACTUAL ALLEGATIONS

### The Accolade TMZF® Hip Stem and LFIT Anatomic V40 Femoral Head

8.     STRYKER DEFENDANTS manufacture medical devices worldwide,

including total hip replacement systems and products.

9.     The Accolade systems include several variations of neck, stem and head components.

10.    The components can, for example, vary in size and material used in the manufacture of the product.

11.    These interchangeable systems were designed to give surgeons more flexibility by providing more anatomically correct implant components that can be custom-fit to the patient.

12.    The Accolade TMZF® Hip Stem and LFIT Anatomic V40 Femoral Head are two parts of a total hip replacement system.

13.    On March 16, 2000, STRYKER DEFENDANTS received FDA clearance to sell its Accolade prosthetic hip stem in the United States.

14.    This clearance (not approval) was obtained through the 510(k) process, which is a method used by manufacturers of medical devices to obtain faster and less costly permission to market a new device.

15.    Through the 510(k) clearance process, a product will be cleared if the manufacturer establishes that the new device is substantially equivalent to a predicate device; one that is already on the market.

16.    The Accolade stem is a hip replacement prosthesis. It is indicated for patients requiring primary total hip arthroplasty or replacement due to painful disabling joint disease of the hip resulting from non-inflammatory degenerative arthritis.

17.    The Accolade stem is a monoblock, single piece artificial hip replacement device that is designed to be implanted into the patient's femur. The Accolade stem is designed to be used

with any number of bearing surface components comprised of the modular ball or artificial femoral head and an acetabular cup or socket.

18.     The stem is manufactured utilizing a proprietary titanium alloy consisting of titanium, molybdenum, zinc and iron.

19.     STRYKER DEFENDANTS' alloy was designed and patented by HOWMEDICA and is unlike any titanium alloy employed in the manufacture of other prosthetic hip implants.

20.     STRYKER DEFENDANTS claim in their promotional materials for the Accolade stem that their alloy is both stronger and less rigid than other titanium alloys. They also claim that the particular titanium alloy has been tested and proven by STRYKER DEFENDANTS to resist the effects of corrosion and fretting.

21.     On November 16, 1999, and again on April 11, 2001, STRYKER DEFENDANTS received clearance from FDA to market the LFIT Anatomic V40 Cobalt Chromium Femoral Head.

22.     Upon receiving clearance in March 2000, STRYKER DEFENDANTS released their Accolade TMZF Hip Stem, the latest evolution in the Company's Meridian Titanium Femoral Stem, the Howmedica Asymmetric Stem Femoral Component, the Osteonics Omnifit AD-HA Hip Stem Series, and the Biomet Taperlock Hip Stem, which were all previously cleared for market between the years of 1994 and 1997.

23.     According to STRYKER DEFENDANTS' marketing materials, the Accolade Stem was developed to maximize a patient's hip range of motion, increase stability, and resist dislocation. These materials also state that the Accolade TMZF Hip Stem is designed to be used with V40 Femoral Heads, which are offered in both forged Vitallium alloy (CoCrMo) and zirconia ceramic.

4

24.     The Accolade Stem is also designed with two neck angles, the standard 132 degrees and extended 127 degrees offset, to assist with joint stability and proper restoration of joint kinematics without lengthening the leg. The neck lengths are proportionally relative to the patient's body geometry to accommodate a wider patient population using a standard femoral head.

25.     The Accolade Stem combines the material characteristics of TMZF (Ti-12Mo-6Zr-2Fe) with a plasma sprayed coating PureFix HA for the stem and neck. The femoral head that is commonly used with the Accolade TMZF Hip Stem is the LFIT Anatomic V40 Femoral Head, which is made from CoCr.

26.     STRYKER DEFENDANTS claim that laboratory testing demonstrates the compatibility of these materials without concern for fretting and corrosion.

### The Accolade and V40 Recall

27.     In August 2016, an investigative report was published in the Journal of Bone and Joint Surgery. In this report, the authors noted 5 instances in which patients implanted with Accolade Stem/LFIT V40 head combinations suffered catastrophic failure when their Accolade stems fractured. Specifically, it was reported that there was extensive corrosion in the V40 head and Accolade stem that was so significant the stem actually fractured at the stem/head juncture. It was also reported that in many of the patients, the corrosion caused the release of significant amounts of metallic debris that significantly damaged the soft tissues surrounding the patient's hips. Below is a picture of a stem that experienced corrosion to the point where it disassociated from the head. This is a catastrophic failure that results in significant injury to the patient's hip.



28.    Following this report, the STRYKER DEFENDANTS issued a recall in the United States, Australia, and Canada.  (See Exhibit A.)  The recall notice states that Stryker is recalling certain lots of LFIT V40 Heads as a result of several "Potential Hazards."  The hazards identified include:

- Dislocation of the femoral head from the hip stem

- Fractured hip stem trunnions

- Excessive metallic debris

- Excessive wear debris

29.    The Recall Notice further states that the problems caused by the LFIT V40 head include "revision" surgery, "inflammatory response," "adverse local tissue reaction," "dislocation," and "periprosthetic fracture."  However, despite these serious "hazards," the recall notice provides no information concerning the cause of the failures or steps surgeons can take to

monitor patients.

30.    A simple, inexpensive blood test can be used to determine whether a patient is experiencing the corrosive process that lead to the 2017 recall.  Specifically, the presence of elevated levels of cobalt, chromium, or titanium in the blood is a definitive sign that a prosthetic hip is corroding.  Despite the availability of this test, the STRYKER DEFENDANTS' recall notice fails to instruct surgeons to contact patients with V40 heads to perform such tests.  In fact, the recall notice does not even tell surgeons that the cause of the "hazards" identified in the notice is excessive corrosion at the head/neck juncture.  As a result, there are potentially several hundred thousand individuals with defective V40 heads whose hips are currently leaching toxic levels of cobalt and chromium into their bodies who are completely unaware that their hips are corroding.

31.    Plaintiff is informed and believes, and thereon alleges, that the problems with the V40 head/Accolade Stem combinations are much larger than those referenced in the STRYKER DEFENDANTS' recall notice and are caused by the metallurgical formula used to manufacture the TMZF Accolade Stem and/or the geometry of the Cobalt/Chromium V40 Head.  Plaintiff alleges that all V40 heads sold by Defendants are defective and should be recalled.  Instead, the STRYKER DEFENDANTS have intentionally downplayed the risk of harm and limited the scope of its recall in an effort to hide from surgeons, patients, and the FDA the true extent of the problems with their defective hips.

## PLAINTIFF'S INJURIES

32.    STRYKER DEFENDANTS' Defective Device was placed into the stream of interstate commerce and was implanted in Plaintiff, Stewart C. Pelton, on January 19, 2009, by Alan L. Valadie, MD at Blake Medical Center. Specifically, Dr. Valadie used a Size 4 Accolade TMZF Plus femoral stem, a 56 mm Trident PSL acetabular cup and a 40 mm LFIT V40 femoral

head in Plaintiff's left hip joint.

33.     Several years after the implantation of the Defective Device, Plaintiff began experiencing discomfort in the area of his Defective Device.

34.     Diagnostic workup revealed the absence of infection, malposition or any other explanation for the Plaintiff's symptoms.

**35.**     Further diagnostic workup revealed the presence of metallosis and trunnion, along with soft tissue inflammation.

36.     Based upon this finding and, in light of the Plaintiff's worsening symptoms, he was taken back for revision surgery on his left hip on January 15, 2015, by Alan Valadie, MD at Blake Medical Center.  During this surgery, it was discovered that there was significant metallosis and trunnionosis in Plaintiff's left hip resulting in soft tissue damage.

37.     Plaintiff has endured extensive rehabilitation in Florida since undergoing revision of his right hip prosthesis.

38.     As a direct and proximate result of STRYKER DEFENDANTS placing the Defective Device into the stream of commerce, Plaintiff has suffered and continues to suffer both injuries and damages, including but not limited to: past, present and future physical and mental pain and suffering; and past, present and future medical, hospital, rehabilitative and pharmaceutical expenses, and other related damages.

39.     At all times material hereto, the Accolade Stem implanted in the Plaintiff was designed, manufactured, marketed, retailed, distributed, and/or supplied by the STRYKER DEFENDANTS.

40.     The Defect Device reached the Plaintiff without substantial change in its condition when it left the possession of STRYKER DEFENDANTS and was used in the manner for which

it was intended.

41.     The Defective Device was defective and unreasonably dangerous when STRYKER DEFENDANTS placed it into the stream of commerce.

42.     Prior to seeing information about the Defective Device on the internet, Plaintiff did not have knowledge or sufficient notice of the cause of the corrosion that occurred with his hip. Even though he had some knowledge of symptoms, he was not aware of the Defendants' wrongful conduct until August, 2016 when he learned that the defendants had recalled certain lots of its V40 heads. Under the facts of this case, Plaintiff's suit was filed well within the applicable statutory limitations period.

43.     Plaintiff exercised reasonable diligence in investigating potential causes of his injury by discussing his injuries with healthcare providers.  None of Plaintiff's conversations with his healthcare providers gave Plaintiff a reason to suspect, or reasonably should have given Plaintiff a reason to suspect, that the hip implanted within him was defective.  The reason for this is that Defendants' fraudulently concealed relevant facts from Plaintiff and the medical community about the true risks of harm associated with its V40/Accolade Stem combinations and fraudulently advised the medical community that instances of corrosion were no non-existent and/or extremely rare.  As a result, Plaintiff and his physicians were deprived of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff relied on Defendants' misrepresentations and omissions and therefore could not reasonably have known or become aware of facts that would lead a reasonable, prudent person to make an inquiry to discover Defendants' tortious conduct.  Plaintiff diligently filed suit once he discovered the actual facts that would lead a reasonable, prudent person to make an inquiry to discover Defendants' tortious conduct. Defendants' misconduct and fraudulent concealment of the relevant facts, as described

*infra*, tolls any relevant statute of limitations.  Regardless, Plaintiff's suit is filed well within the applicable statutory limitations period.

44.     Defendants are and were under a continuing duty to monitor and disclose the true character, quality, and nature of its Defective Device.  Because of Defendants' misconduct and fraudulent concealment of the true character, quality, and nature of its device, Defendants are estopped from relying on any statute of limitations defense.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### (STRYKER DEFENDANTS)

45.     Plaintiff re-alleges the above paragraphs, and incorporate by reference the allegations set forth above.

46.     STRYKER    DEFENDANTS    developed,    tested,    assembled,    designed, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the Accolade Hip Stem and the LFIT V40 Femoral Head to physicians and consumers.

47.     As a result, STRYKER DEFENDANTS had a duty to perform each of these functions reasonably and with reasonable and due care for the safety and well-being of patients in whom the devices would be implanted.

48.     STRYKER DEFENDANTS failed to use reasonable and due care for the safety and well-being of those in whom the devices would be implanted and are, therefore, negligent in the following respects:

a. STRYKER DEFENDANTS failed to adequately design and manufacture the devices to ensure that it would not corrode, erode, deteriorate and induce severe metal toxicity in patients. The flaws include but are not limited to:

i. The incompatibility of the TMZF titanium with other device components like the

cobalt chromium LFIT V40 Femoral Head;

ii. Poor design of the taper junction between stem and femoral head such that micro motion was predictable;

iii. Poor manufacturing practices such that the taper junction between the stem and head do not "fit" the way they were intended;

iv. Failing to limit the femoral head components that were recommended for use with the Accolade stem to those that would not promote fretting and corrosion;

v. A combination of the above factors leads to rapid, severe heavy metal cast off causing soft tissue and bony necrosis, pain and premature failure of the devices.

b. STRYKER DEFENDANTS failed to adequately test the devices to ensure that they would not corrode, erode, deteriorate and induce severe metal toxicity in the patient;

c. STRYKER DEFENDANTS failed to conduct anything other than bench testing so that when manufactured and marketed, patients became, in essence, Stryker's first clinical trial;

d. STRYKER DEFENDANTS failed to properly and adequately market its product and made affirmative representations that the device would not fret or corrode in the human body. These representations were false and misleading to both physicians and the consumers;

e. STRYKER DEFENDANTS negligently trained their sales force to detail the device utilizing representations that the STRYKER DEFENDANTS knew or should have known were false, creating in the minds of both surgeons and consumers that the device would not cause metal toxicity;

f. STRYKER DEFENDANTS failed to manufacture the Accolade Stem and the LFIT V40 Femoral Head to STRYKER DEFENDANTS' own internal specifications such that the

taper junction between the stem and head prematurely failed causing metal debris cast-off and severe metal toxicity in patients;

g.  STRYKER DEFENDANTS failed to exercise reasonable care in the manufacture of the Accolade Stem and the LFIT V40 Femoral Head in that either:

i.  The taper was poorly fashioned so that it did not "**fit**;"

ii.  The TMZF titanium material was fashioned in such a manner that it did not maintain structural integrity when implanted in the biologic environment;

iii.  The TMZF titanium material was fashioned in such a manner that it did not maintain structural integrity when mated with a Chromium Cobalt femoral head;

iv.  The Chromium Cobalt femoral head was manufactured such that it did not "fit";

v.  The Chromium Cobalt femoral head was fashioned in such a manner that it did not maintain structural integrity when implanted in the biologic environment; or,

vi.  The Chromium Cobalt femoral head was fashioned in such a manner that it did not maintain structural integrity when mated with a titanium stem.

h.  STRYKER DEFENDANTS failed to adequately test the TMZF alloy's compatibility with chrome cobalt components, such as the LFIT V40 Femoral Head, in an effort to prevent corrosion and fretting at the neck/stem taper neck junction of this modular device;

12

i. STRYKER DEFENDANTS failed to promptly act upon reports of failure such that these devices continued to be implanted in unknowing patients by surgeons well after they should have been recalled; and

j. STRYKER DEFENDANTS failed to adequately warn implanting physicians as well as the patients that the Accolade Stem and LFIT V40 Femoral Head were defective and could lead to patient injury.

49.     The above conduct exhibits STRYKER DEFENDANTS' failure to exercise reasonable care. It was foreseeable that such negligence would lead to premature device failure as well as severe, debilitating injuries that were permanent.

50.     As a direct and proximate result of the STRYKER DEFENDANTS' negligence, Plaintiff suffered failure of the Accolade Stem and LFIT V40 Femoral Head, severe physical pain and suffering, emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff respectfully requests that they be granted relief against STRYKER DEFENDANTS, as contained in the Prayer For Relief.

## COUNT II – STRICT LIABILITY- Defective Design
### (STRYKER DEFENDANTS)

51. Plaintiff re-alleges the paragraphs 1 through 44 and incorporate by reference the allegations set forth above.

52. This is an action based upon design defect against Defendants.

53. Integral to the design of the Accolade stem was its compatibility with Stryker's chromium/cobalt femoral head.

54. Defendant's Accolade Stem is designed in such a way that, when used as intended in combination with a chromium/cobalt femoral head, it causes serious, permanent and devastating damage to patients in which it is implanted. The damage and mechanism of injury have been previously described.

55. When combined with a chromium/cobalt femoral head, Defendant's Accolade Stem does not perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable to Defendant.

56. The risks of using Defendant's Accolade Stems in combination with chromium/cobalt femoral heads outweigh the benefits of using them.

57. The Accolade Stems that were implanted into Plaintiff's hips were defectively designed.

58. As a direct and proximate result of the STRYKER DEFENDANTS' negligence, Plaintiff suffered failure of the Accolade Stem and LFIT V40 Femoral Head, severe physical pain and suffering, emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff respectfully requests that they be granted relief against STRYKER DEFENDANTS, as contained in the Prayer For Relief.

## COUNT III – STRICT LIABILITY -Manufacturing Defect
### (STRYKER DEFENDANTS)

59. Plaintiff re-alleges the paragraphs 1 through 44 and incorporate by reference the allegations set forth above.

60.   This is an action based on a manufacturing defect against both Defendants.

61.   The Accolade Stem is designed for implantation into the human body and to last fifteen or more years.  It is also designed to be compatible with human tissue and bone.

62.   The Accolade Stem implanted in the Plaintiff failed prematurely as previously

described.

63.   The Accolade Stems installed in Plaintiff's hips were combined with Stryker's chromium/cobalt femoral heads.

64.   The Accolade TMZF titanium stem was manufactured in a substandard manner such that either:

    a.   The taper was poorly fashioned so that it did not "fit;"

    b.   The TMZF titanium material was fashioned in such a manner that it did not maintain structural integrity when implanted in the biologic environment;

    c.   The TMZF titanium material was fashioned in such a manner that it did not maintain structural integrity when mated with a chromium/cobalt femoral head;

    d.   The LFIT Anatomic V40 chromium/cobalt femoral head was manufactured such that it did not "fit";

    e.   The LFIT Anatomic V40 chromium/cobalt femoral head was fashioned in such a manner that it did not maintain structural integrity when implanted in the biologic environment;

    f.   The LFIT Anatomic V40 chromium/cobalt femoral head was fashioned in such a manner that it did not maintain structural integrity when mated with a chromium/cobalt femoral head.

65.   This combination was not compatible with human tissue and bone. Through a process of fretting and corrosion it released heavy metals into the Plaintiff's body causing severe and permanent destruction of bone and tissue. Defendant failed to manufacture the product in a manner that prevented fretting and corrosion and, in fact, manufactured the product such that it caused fretting and corrosion.

66.   The Accolade Stems coupled with LFIT Anatomic V40 Femoral Heads installed in Plaintiff's bilateral hips contained manufacturing defects.

67. As a direct and proximate result of the STRYKER DEFENDANTS' negligence, Plaintiff suffered failure of the Accolade Stem and LFIT V40 Femoral Head, severe physical pain and suffering, emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff respectfully requests that they be granted relief against STRYKER DEFENDANTS, as contained in the Prayer For Relief.

## COUNT IV – STRICT LIABILITY – Failure to Warn
### (STRYKER DEFENDANTS)

68. Plaintiff re-alleges the paragraphs 1 through 44 and incorporate by reference the allegations set forth above.

69. The Accolade Stem implanted into Plaintiff contained no warnings or in the alternative, inadequate warnings as to the risk that the product could cause significant heavy metal toxicity.

70. The Accolade Stem implanted into Plaintiff contained no warnings that it should not be implanted with chromium/cobalt femoral heads or sleeves which posed a significantly increased risk of fretting, corrosion and heavy metal toxicity in patients.

71. The warnings that accompanied the Accolade Stem failed to provide that level of information that an ordinary consumer would expect when using the Accolade implant in a manner reasonably foreseeable to the Defendant.

72. Had Plaintiff, Stewart C. Pelton, or his surgeon, received a proper or adequate warning as to the risks associated with using the Accolade implant, Plaintiff would not have agreed to be implanted with the product.

16

73.   Reasonable and adequate alternatives to chromium/cobalt femoral heads existed at the time Plaintiff was implanted with his Accolade stem.

74.   Had Plaintiff's surgeon received a proper or adequate warning as to the risks associated with using the Accolade Stem and its combination with chromium/cobalt femoral heads, he would not have recommended the device; or would have used an alternate device; or at a minimum, provided Plaintiff with adequate warning and obtained his informed consent.

75. As a direct and proximate result of the STRYKER DEFENDANTS' failure to warn as to the Accolade's unreasonable risk of serious injury and damage, Plaintiff suffered failure of the Accolade Stem and LFIT V40 Femoral Head, severe physical pain and suffering, emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff respectfully requests that they be granted relief against STRYKER DEFENDANTS, as contained in the Prayer For Relief.

## COUNT V - BREACH OF WARRANTY
### (STRYKER DEFENDANTS)

76. Plaintiff re-alleges the above paragraphs and incorporate by reference as if set forth herein.

77.   At all times material hereto, the STRYKER DEFENDANTS engaged in the business of designing, manufacturing, testing, selling, detailing, distributing, marketing, and/or promoting the Accolade Stem and the LFIT V40 Femoral Head, which was unreasonably dangerous, and therefore defective.

78.   The Accolade Hip Stem and the LFIT V40 Femoral Head were defective and used in the manner intended by STRYKER DEFENDANTS.

17

79.    It was foreseeable that Plaintiff would receive the Accolade Stem and LFIT V40 Femoral Head as part of a hip replacement procedure.

80.    At all times material hereto, the Accolade Hip Stem and the LFIT V40 Femoral Head reached Plaintiff without substantial change in the condition in which it left the possession of the STRYKER DEFENDANTS and was used in manner which had been contemplated and labeled.

81.    The Accolade Hip Stem and LFIT V40 Femoral Heads were defective and unreasonably dangerous when they entered the stream of commerce and were received by Plaintiff because:

   a.   When they entered the stream of commerce, the Accolade Hip Stem and LFIT V40 Femoral Heads contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting users and consumers like Plaintiff to risks which exceeded the benefits of the products;

   b.   When they entered the stream of commerce, the Accolade Hip Stem and LFIT V40 Femoral Heads were defective in design and formulation, making the use of the products more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with hip replacement surgery;

   c.   The Accolade Hip Stem and LFIT V40 Femoral Heads were insufficiently and inadequately tested;

   d.   The Accolade Hip Stem and LFIT V40 Femoral Heads were not manufactured to STRYKER DEFENDANTS' specifications;

   e.   The Accolade Hip Stem and LFIT V40 Femoral Heads are unreasonably dangerous and defective when used as intended especially in light of the fact that there existed a safer design of the product formulations;

   f.   When they entered the stream of commerce, the Accolade Hip Stem and LFIT V40 Femoral Heads were defective and unreasonably dangerous in that they were not constructed of materials that would prevent fretting and corrosion, and would not last longer than competing hip replacement devices;

   g.   The Accolade Hip Stem and LFIT V40 Femoral Heads were marketed and promoted for use as safe products in total hip replacement, when they were not safe for their intended use;

   h.   The Accolade Hip Stem implanted into the Plaintiff contained no warning against

the use of Chromium Cobalt heads like the LFIT V40 Femoral Head;

i.   Reasonable and adequate alternatives to Chromium Cobalt femoral heads, like the LFIT V40 Femoral Heads, existed at the time Plaintiff was implanted with his Accolade stem and LFIT V40 Femoral Head;

j.   The warnings that accompanied the Accolade Stem and the LFIT V40 Femoral Heads failed to provide the level of information that an ordinary consumer would expect when using the Accolade Stem and LFIT V40 Femoral Heads in a manner reasonably foreseeable to the Defendants;

k.   Had Plaintiff's surgeon received a proper or adequate warning as to the risks associated with using the Accolade Stem and its combination with Chromium Cobalt femoral heads, like the LFIT V40 Femoral Head, he would not have recommended the device; would have used an alternate device or at a minimum, provided Plaintiff with adequate warning and obtained his informed consent. As stated above, had Plaintiff received an adequate warning, he would not have agreed to have the Accolade Stem and LFIT V40 Femoral Head implanted in him; and

l.   The intended use of the Accolade Hip Stem and the LFIT V40 Femoral Head caused harmful side effects that outweighed any potential utility.

82.   Accolade Stem and LFIT V40 Femoral Heads were not fit for the ordinary purposes for which such goods are used.

83.   As a direct and proximate result of the actions and inactions of the STRYKER DEFENDANTS as set forth above, Plaintiff sustained injuries.  Plaintiff is entitled to damages as enumerated herein.  Plaintiff's damages were not caused by an inherent characteristic of hip replacement surgery that cannot be eliminated, but instead were caused by the product being dangerously defective as outlined above.

84.   STRYKER DEFENDANTS' actions and inactions as set forth above were intentional and deliberate, and resulted in injuries to the Plaintiff who suffered failure of the Accolade Stem and LFIT V40 Femoral Head, severe physical pain and suffering, emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses.  These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff respectfully requests that they be granted relief against STRYKER DEFENDANTS, as contained in the Prayer For Relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against the STRYKER DEFENDANTS as follows:

a.  Awarding compensatory damages resulting from STRYKER DEFENDANTS' violation of Florida law;

b.  Awarding compensatory damages resulting from STRYKER DEFENDANTS' breach of warranty and negligence, as alleged above;

c.  Awarding actual damages to the Plaintiff incidental to Plaintiff's purchase and use of The Accolade Hip Stem in an amount to be determined at trial;

d.  Awarding pre-judgment and post-judgment interest to the Plaintiff as provided by law;

e.  Awarding the costs and expenses of their litigation to the Plaintiff;

f.  Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law; and

g.  Granting all such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated this 26th day of June, 2017.

Respectfully submitted,

Joseph H. Saunders, Esquire
**SAUNDERS & WALKER, P.A.**
3491 Gandy Blvd. North, Ste. 200
Pinellas Park, FL 33781
(727) 579-4500, Fax (727) 577-9797
FBN: 0341746
joe@saunderslawyers.com

20